**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | |
|---|---|
| Jared M. Carpenter, | ) |
| | ) **ORDER GRANTING DEFENDANT'S** |
| Plaintiff, | ) **MOTION FOR SUMMARY JUDGMENT** |
| | ) |
| vs. | ) Case No. 3:18-cv-156 |
| | ) |
| Grinnell Mutual Reinsurance Company, | ) |
| | ) |
| Defendant. | ) |

Before the Court is a motion for summary judgment filed by Defendant Grinnell Mutual Reinsurance Company ("Grinnell") on October 11, 2019. Doc. No. 27. Plaintiff Jared M. Carpenter ("Carpenter") responded in opposition on November 1, 2019. Doc. No. 29. Grinnell filed a reply brief on November 15, 2019. Doc. No. 30. Grinnell requests that the Court rule as a matter of law that Grinnell is not obligated to provide coverage and benefits to Carpenter under the commercial insurance policy that it issued to Frosty's Carpet Center, Inc. ("Frosty's Carpet"), a business partly owned by Carpenter. For the reasons below, Grinnell's motion for summary judgment is granted.

## I. BACKGROUND

### A. The Accident

This insurance coverage dispute arises out of an automobile accident that occurred on April 10, 2016, near Buxton, North Dakota. Doc. No. 1-2, ¶ 5. On that day, Carpenter planned to run a personal errand—going to Detroit Lakes, Minnesota, to purchase a snowmobile for the personal use of he and his family. Doc. No. 28-9 at 17:8–10, 17:24–18:19, 19:10–14. Carpenter asked his friend Steven Ballintine to join and drive him to Detroit Lakes because of Ballintine's knowledge about snowmobiles. Id. at 17:16–19. Two of Carpenter's children also came along. Id. at 8:25–9:2, 17:20–23.

The group headed south on Interstate 29 in Ballintine's vehicle, with Carpenter in the passenger seat. Id. at 18:20–23; Doc. No. 1-2, ¶ 5. The vehicle was owned by Ballintine, who had no ownership interest in Frosty's Carpet and was not being paid by Frosty's Carpet for assisting Carpenter in picking up the snowmobile. Doc. No. 28-9 at 18:24–19:9, 37:19–38:4. Ballintine's vehicle was not covered by any liability bond or insurance policy. Doc. No. 1-2, ¶ 14.

Near mile marker 113, Ballintine lost control of the vehicle, and it rolled into the west ditch of I-29. Id. ¶ 6. Carpenter was ejected from the vehicle and sustained serious injuries to his spine and several internal organs. Id. ¶ 7; Doc. No. 28-9 at 23:16–25:13. Carpenter first became aware of his injuries when he regained consciousness approximately one month after the accident. Doc. No. 28-9 at 20:6–18, 58:22–59:3.

**B.     The Policy**

At the time of the accident, Carpenter co-owned Frosty's Carpet, a floor covering sale and installation business in Grand Forks, North Dakota, with his father, Howard Carpenter. Id. at 10:25–11:6, 12:19–13:15, 51:12–23. Frosty's Carpet held a commercial insurance policy issued by Grinnell for the policy period of December 6, 2015, to December 6, 2016. Doc. No. 28-1 at DEF000002. Relevant here are the Business Auto Coverage Form, the "North Dakota Uninsured Motorists Coverage" Endorsement ("UM Endorsement"), and the "North Dakota Personal Injury Protection Endorsement" ("P.I.P. Endorsement").

The policy lists "FROSTY'S CARPET CENTER INC" as the "Named Insured." Id. at DEF000003. The mailing address of the Named Insured is stated as:

> FROSTY'S CARPET CENTER INC
> C/O HOWARD & JARED CARPENTER
> 1903 S WASHINGTON ST
> GRAND FORKS      ND 58201

Id. at DEF000002.

The Business Auto Coverage Form Declarations list personal injury protection coverage subject to Covered Auto Designation Symbol Nos. 5 and 7 and uninsured motorist coverage subject to Covered Auto Designation Symbol No. 6. Id. at DEF000003. The relevant Covered Auto Designation Symbols are described as follows:

| 5 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
|---|---|---|
| 6 | Owned "Autos" Subject To A Compulsory Un-Insured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |

Id. at DEF000011. The Business Auto Coverage Form states, "The symbols entered next to a coverage on the Declarations designate the only 'autos' that are covered 'autos.'" Id.

The "Specifically Described 'Autos'" are listed in Item Three of the Declarations, Schedule of Covered Autos You Own: a 2013 Ford F-150 S/C 4x4 and a 2014 Chrysler Town & Country. Id. at DEF000004. Carpenter testified during his deposition that the Ford was his personal vehicle, which was in his father's name. Doc. No. 28-9 at 31:9–32:2. The Chrysler, meanwhile, was his wife's personal vehicle, which was in his name. Id. at 32:10–33:10, 34:20–35:4.

The words "you" and "your" in the policy refer to the Named Insured, Frosty's Carpet. Doc. No. 28-1 at DEF000011. The Business Auto Coverage Form additionally defines "insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." Id. at DEF000020.

3

Carpenter seeks coverage under the UM Endorsement. Under that endorsement, Grinnell agrees to "pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'" Id. at DEF000023. The endorsement defines "Who Is An Insured" as follows:

> If the Named Insured is designated in the Declarations as:
>
> **1.** An individual, then the following are "insureds":
>
>     **a.** The Named Insured and any "family members".
>
>     **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
>     **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>
> **2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
>     **a.** Anyone "occupying a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
>     **b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

Id. at DEF000024.

Carpenter also seeks coverage under the P.I.P. Endorsement. Under that endorsement, Grinnell agrees to "pay personal injury protection benefits in accordance with the North Dakota Auto Accident Reparations Act to or for an 'insured' who sustains 'bodily injury' caused by an 'accident' arising out of the operation, maintenance or use of an 'auto' as a vehicle." Id. at DEF000031. The endorsement defines "Who Is An Insured" as follows:

1. The "named insured" or any relative who sustains "bodily injury" while "occupying" any "auto" or while a "pedestrian" through being struck by any "auto" or motorcycle;

2. Any other person who sustains "bodily injury":

    a. While "occupying", or while a "pedestrian" through being struck by, the covered "auto";

    b. While "occupying" an "auto" not owned by, but operated by a "named insured" or "family member", if the "bodily injury" results from the operation of the "auto" by the "named insured" or "family member".

Id. at DEF000032. The endorsement reiterates that "named insured" means "the person or organization named in the Declarations." Id. at 000033.

### C. Procedural History

Carpenter filed an Application for Benefits with Grinnell on May 27, 2016. Doc. No. 28-2. On June 23, 2016, Grinnell sent Carpenter a letter informing him that his claim was denied because he was not an "insured" entitled to coverage under the UM Endorsement or the P.I.P. Endorsement. Doc. No. 28-6.

Having received no benefits, on July 12, 2018, Carpenter commenced this action against Grinnell in North Dakota state court. See Doc. No. 1, ¶ 2. Carpenter seeks a declaratory judgment that he is entitled to personal injury protection and uninsured motorist coverage under the policy. Doc. No. 1-2., ¶ 17. For damages, he seeks to recover a sum in excess of $50,000 for personal injury protection and uninsured motorist benefits as well as any other unpaid benefits. Id. On July 24, 2018, Grinnell removed the action to this Court. Doc. No. 1.

On October 11, 2019, Grinnell filed the motion for summary judgment that is presently before the Court. Doc. No. 27. Grinnell argues that Carpenter's claims are time-barred under North Dakota law and that no benefits are payable to Carpenter pursuant to the language of the policy. Doc. No. 28.

## II. DISCUSSION

### A. Summary Judgment Standard and General Principles of Insurance Policy Interpretation

"In a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." Schilf v. Eli Lilly & Co., 687 F.3d 947, 948 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" Dick v. Dickinson State Univ., 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting Anderson, 477 U.S. at 248). Courts must afford "the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation." TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d 701, 707 (8th Cir. 2016) (quoting Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 611 (8th Cir. 2014)). "At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." Nunn v. Noodles & Co., 674 F.3d 910, 914 (8th Cir. 2012) (citing Anderson, 477 U.S. at 249).

Neither party seriously disputes the facts here. The only questions for resolution are whether Carpenter is entitled to personal injury protection and uninsured motorist benefits under the policy and whether his claims are barred by the statute of limitations. The parties agree that North Dakota law governs these questions. Accordingly, the Court will apply North Dakota Supreme Court precedent and attempt to predict how that court would decide any state-law questions it has yet to resolve. See Stuart C. Irby Co., Inc. v. Tipton, 796 F.3d 918, 922 (8th Cir. 2015).

"Insurance policy interpretation is a question of law." Forsman v. Blues, Brews & Bar-B-Ques, Inc., 2017 ND 266, ¶ 10, 903 N.W.2d 524 (citing K & L Homes, Inc. v. Am. Family Mut. Ins. Co., 2013 ND 57, ¶ 8, 829 N.W.2d 724). The North Dakota Supreme Court has consistently explained its approach to interpreting insurance policies this way:

> We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

Borsheim Builders Supply, Inc. v. Manger Ins., Inc, 2018 ND 218, ¶ 8, 917 N.W.2d 504 (citation omitted).

The basic task is to determine if the insurance policy's affirmative coverage provisions apply, and if so, to then look at whether any exclusions bar coverage. "It is axiomatic that the burden of proof rests upon the party claiming coverage under an insurance policy." Forsman, 2017 ND 266, ¶ 12, 903 N.W.2d 524 (citation omitted). "If and only if a coverage provision applies to the harm at issue will the court then examine the policy's exclusions and limitations of coverage." Borsheim Builders, 2018 ND 218, ¶ 9, 917 N.W.2d 504 (citation omitted). "While the insured bears the initial burden of demonstrating coverage, the insurer carries the burden of establishing the applicability of exclusions." Id. ¶ 10 (citation omitted). "Exclusions from coverage . . . must be clear and explicit and are strictly construed against the insurer." Id. ¶ 8 (ellipses in original) (citation omitted).

B.   **Statute of Limitations**

In its brief in support of the summary judgment motion, Grinnell argues that Carpenter's claims for both personal injury protection and uninsured motorist benefits should be dismissed because they were brought outside of the two-year limitations period found in N.D. Cent. Code § 26.1-41-19(1). In his response brief, Carpenter argues that the uninsured motorist claim is instead subject to the six-year statute of limitations set forth in N.D. Cent. Code. § 28-01-16(1). He does not respond, however, to the argument that his personal injury protection claim is time-barred. In its reply brief, Grinnell reiterates that Carpenter's personal injury protection claim is time-barred but does not counter Carpenter's argument as to the uninsured motorist claim.

The general statute of limitations for actions based upon a contract is found in N.D. Cent. Code § 28-01-16(1). That statute states that an action upon a contract "must be commenced within six years after the claim for relief has accrued," with exceptions not relevant here. N.D. Cent. Code § 28-01-16(1). The North Dakota Auto Accident Reparations Act (the "Act") sets forth a different statute of limitations when failure to pay no-fault benefits is at issue, however:

> If no basic or optional excess no-fault benefits have been paid for loss, an action for the benefits may be commenced not later than two years after the injured person suffers the loss and either knows, or in the exercise of reasonable diligence should know, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. . . .

N.D. Cent. Code § 26.1-41-19(1). The Act goes on to provide that "[t]he time period limitations prescribed in this section govern all actions for basic and optional excess no-fault benefits under this chapter notwithstanding any limitation prescribed elsewhere in the laws of this state." Id. § 26.1-41-19(4); see also N.D. Cent. Code § 1-02-07 (stating the general rule in North Dakota that a special statutory provision will control over a general provision where the two are in conflict).

The Court agrees with Grinnell that Carpenter's personal injury protection claim is barred by the Act's two-year statute of limitations for actions involving no-fault benefits. The P.I.P.

8

Endorsement explicitly states that Grinnell "will pay personal injury protection benefits in accordance with the North Dakota Auto Accident Reparations Act." Doc. No. 28-1 at DEF000031. Carpenter brought his personal injury protection claim outside of the two-year limitations period set forth in the Act. It is undisputed that Carpenter first became aware of his injuries in May 2016 when he regained consciousness; he did not commence this action, however, until July 12, 2018. His personal injury protection claim must therefore be dismissed as time-barred.

Turning to Carpenter's other coverage claim, it appears that the North Dakota Supreme Court has not explicitly ruled upon the issue of which statute of limitations applies to uninsured motorist claims. This Court predicts, however, that the North Dakota Supreme Court would decide that such claims are not barred by the two-year statute of limitations found in subsection 1 of N.D. Cent. Code § 26.1-41-19. Uninsured motorist coverage and personal injury protection (or no-fault) coverage are separate and distinct types of insurance that are governed by separate and distinct statutes. See Steenson v. Gen. Cas. Co., 397 N.W.2d 461, 463 (N.D. 1986) ("[I]n North Dakota, the uninsured motorist statute and Auto Accident Reparations Act do not refer to each other. There is nothing expressed in these statutes to suggest that recovery on the uninsured motorist coverage is limited by the threshold requirements of the separate no-fault statute."). Subsection 4 explicitly states that "[t]he time period limitations prescribed in this section govern all actions for basic and optional excess no-fault benefits under this chapter." N.D. Cent. Code § 26.1-41-19(4) (emphasis added). "This chapter" refers specifically to Chapter 26.1-41, the Auto Accident Reparations Act. Uninsured motorist coverage is governed instead by Chapter 26.1-40, the general automobile insurance chapter.

Further, uninsured motorist benefits by definition are not "no-fault benefits" because the insured must establish that the insured's injuries resulted from the tortious conduct of the uninsured motorist. See Gillespie v. Nat'l Farmers Union Prop. & Cas. Co., 2016 ND 193, ¶ 12, 885 N.W.2d

9

771 (construing the phrase "legally entitled to recover" in the context of underinsured motorist coverage); Shah v. State Farm Mut. Auto. Ins. Co., 377 F. Supp. 2d 748, 754, 759 (D.N.D. 2005) (same); Perius v. Nodak Mut. Ins. Co., 2010 ND 80, ¶ 12, 782 N.W.2d 355 ("To recover on his claim against Nodak for uninsured motorist coverage, Perius must prove liability by an uninsured driver."); 1 Alan I. Widiss & Jeffrey E. Thomas, Uninsured & Underinsured Motorist Insurance § 7.2 (rev. 3d ed. 2019) ("The uninsured motorist coverage is intended by insurers to apply only to accidents where fault is attributable, and it is not available to a claimant in the absence of negligence.").

Because the two-year statute of limitations specific to no-fault claims does not apply to Carpenter's uninsured motorist claim, the Court must look elsewhere to determine the governing limitations period. Carpenter's uninsured motorist claim clearly constitutes a breach of contract claim because it is based on Grinnell's contractual obligation under the policy to pay uninsured motorist benefits to its insured. See 1 Widiss & Thomas, Uninsured & Underinsured Motorist Insurance, at § 7.7 ("Appellate court decisions almost uniformly hold that in the absence of any provision in the insurance policy coverage terms, a claim for uninsured motorist insurance benefits is a contractual right and, therefore, the contract statute of limitations applies."). The claim is therefore governed by the general six-year statute of limitations for breach of contract actions found in N.D. Cent. Code § 28-01-16(1). It is undisputed that Carpenter brought the uninsured motorist claim within six years, so it is not time-barred.

### C. Coverage Under the Policy Issued to Frosty's Carpet

The Court turns now to interpretation of the policy issued by Grinnell. Because Carpenter's claim for personal injury protection benefits is time-barred, the Court need only address whether he is entitled to uninsured motorist benefits under the policy. This analysis involves two questions: (1) whether the UM Endorsement necessarily requires that Carpenter occupied a "covered auto" in order

to be entitled to coverage, and (2) whether Carpenter qualifies as an "insured" under the definition of "Who Is An Insured" in the UM Endorsement.

1. "Covered Auto"

The Court will begin with the first question. It is clear that at the time of the accident Carpenter was not occupying a "covered auto" as that term is defined for purposes of uninsured motorist coverage—or any other type of auto coverage for that matter—under the policy. The vehicle occupied by Carpenter was owned by Ballintine—not Carpenter, Carpenter's father, or Frosty's Carpet. The vehicle also was not one of the "autos" specifically described in the schedule of "covered autos." Nor was the vehicle a temporary substitute used by Carpenter because one of his or Frosty's Carpet's vehicles was out of service. Thus, Carpenter is only entitled to uninsured motorist coverage if the UM Endorsement provides coverage where no "covered auto" was involved in the accident.

Grinnell argues that the policy requires that an accident involve a "covered auto." At first glance, certain language in the policy appears to support that argument. Item Two of the Declarations states, "This policy provides only those coverages where a charge is shown in the premium below [which includes uninsured motorist coverage here]. Each of these coverages will apply only to those 'autos' shown as covered 'autos.'" Doc. No. 28-1 at DEF000003 (emphasis added). Section I of the Business Auto Coverage Form states similarly, "The symbols entered next to a coverage on the Declarations designate the only 'autos' that are covered 'autos.'" Id. at DEF000011 (emphasis added). The UM Endorsement specifically states that it "modifies insurance provided under" the Business Auto Coverage Form "[f]or a covered 'auto' licensed or principally garaged in" North Dakota. Id. at DEF000023 (emphasis added).

11

A further look at the UM Endorsement suggests, however, that a "covered auto" is not always required. The "Who Is An Insured" definition in the UM Endorsement provides the following in relevant part:

> If the Named Insured is designated in the Declarations as:
>
> **1.** An individual, then the following are "insureds":
>
>     **a.** The Named Insured and any "family members".
>
>     **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
>     **c.** . . .
>
> **2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
>     **a.** Anyone "occupying a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
>     **b.** . . .[1]

Id. at DEF000024. Notably, while 1.b. and 2.a. require a "covered auto" or temporary substitute, 1.a. says nothing about a "covered auto." Instead, read in conjunction with the coverage provision of the UM Endorsement, 1.a. appears to merely require that an individual Named Insured and any "family members" be injured in an "accident" involving an "uninsured motor vehicle." If uninsured motorist coverage always requires that a "covered auto" be involved, there would be no need to distinguish between those situations involving the individual Named Insured and "family members"

---

[1] The Court has omitted 1.c. and 2.b. because they apply to "[a]nyone . . . entitled to recover because of 'bodily injury' sustained by another 'insured.'" In effect, then, 1.c. and 2.b. must be understood in light of the remaining portions of the definition, and they do not require independent analysis here. Nor are they potentially relevant to this case where Carpenter is not seeking damages on behalf of another "insured."

and those involving other individuals.  See Stoddard v. Citizens Ins. Co. of Am., 643 N.W.2d 265, 269–70 (Mich. Ct. App. 2002); Bushey v. N. Assurance Co. of Am., 766 A.2d 598, 603 (Md. 2001).

The exclusions in the UM Endorsement also suggest that a "covered auto" is not always required for coverage to exist.  The third exclusion states that uninsured motorist coverage does not apply to "'[b]odily injury' sustained by an 'insured' while 'occupying' any vehicle owned by, or furnished or available for the regular use of, the Named Insured or, if the Named Insured is an individual, any 'family member', that is not a covered 'auto.'"  Id.  This exclusion would be rendered meaningless if uninsured motorist coverage under the policy always required that an "accident" involve a "covered auto."  See Wright v. Cincinnati Ins. Co., 2003-Ohio-4201, ¶¶ 69-71 (Ohio Ct. App. 2003); Stoddard, 643 N.W.2d at 269–70; Bushey, 766 A.2d at 603.  To the extent that any ambiguity remains, the Court must interpret the policy in favor of the insured.  Therefore, under the UM Endorsement, a "covered auto" need not be involved in an "accident" in one situation: when an individual—as opposed to a partnership, LLC, corporation, or other organization—Named Insured and any "family members" are involved.

### 2. "Insured"

This conclusion narrows the focus of the Court's second inquiry: whether Carpenter is an "insured" for purposes of uninsured motorist coverage.  Because a "covered auto" was not involved in the accident, Carpenter can only qualify as an "insured" under the UM Endorsement if he as an individual is the Named Insured designated in the declarations.[2]  It is unambiguous under the policy that Carpenter is not the Named Insured and that the Named Insured is a corporation rather than an individual.  The Business Auto Coverage Form Declarations clearly list the Named Insured as "Frosty's Carpet Center, Inc.," which is a corporation.  Doc. No. 28-1 at DEF000003.

---

[2] Technically, Carpenter would also qualify if he were a "family member" of the Named Insured, but neither party has argued to that effect.

13

The Commercial Lines Policy Common Policy Declarations do mention "Howard & Jared Carpenter" in the "Named Insured and Mailing Address" field but only as part of a "care of" line below "Frosty's Carpet Center, Inc." Id. at DEF000002. Carpenter does not transform into the Named Insured by virtue of being designated as one of the "care of" addressees. See Dahlstedt v. State Farm Ins. Co., No. CIV. A. 97-02878D, 1998 WL 324197, at *3 (Mass. Super. June 8, 1998); Lyman v. Stuart Corp., No. C3-95-2460, 1996 WL 229259, at *2 (Minn. Ct. App. May 7, 1996). The c/o designation instead serves only to acknowledge the fact that Carpenter is an agent of Frosty's Carpet to whom physical custody of insurance documents may be entrusted. Frosty's Carpet remains the only Named Insured under this commercial policy.

To try to save his claim for coverage, Carpenter relies upon the doctrine of reasonable expectations. He quotes the following language from his deposition about his understanding of coverage under the policy:

> Q. The language used in there states that, the commercial insurance policy issued by Grinnell. Is it your understanding that the policy that you secured was a commercial insurance policy for the business that you were involved in?
>
> A. A commercial insurance policy, yeah, but I figured I was covered, too. I mean, I figured it's just a policy, I mean, insurance policy that covered all of us.
>
> Q. When you say us, who are you talking to?
>
> A. Well, like, I mean my vehicles and just the insurance itself. Because, like I told you, they had everything, the business, our vehicles, my house, my dad's house, just everything that we owned, basically, they had the insurance for. . . .
>
> . . . .
>
> Q. What's your understanding with respect to how Grinnell Insurance provided insurance to your business, Frosty's Carpet, your home, at or around the time of the accident, and the vehicles, at or around the time of the accident?
>
> A. I just figure that they're my insurance company. I mean, we have everything with them, so no matter what happens, I'm covered with it.

Doc. No. 28-9 at 50:6–24, 56:2–11.

The Court need not apply the reasonable expectations doctrine because the North Dakota Supreme Court "has expressly declined to adopt the doctrine of reasonable expectations." Huether v. Nodak Mut. Ins. Co., 2015 ND 272, ¶ 12, 871 N.W.2d 444; see also W. Nat'l. Mut. Ins. Co. v. Univ. of N.D., 2002 ND 63, ¶ 19, 643 N.W.2d 4 (citation omitted); Center Mut. Ins. Co. v. Thompson, 2000 ND 192, ¶ 12, 618 N.W.2d 505 (citing RLI Ins. Co. v. Heling, 520 N.W.2d 849, 854–55 (N.D. 1994)). Further, even if the doctrine were part of North Dakota law, "this Court would have to determine the language of the policy is sufficiently ambiguous in order to apply the doctrine." Huether, 2015 ND 272, ¶ 12, 871 N.W.2d 444 (citation omitted).

The Court is not persuaded by Carpenter's argument that the definition of "you" in the policy makes the identity of the Named Insured ambiguous. The Business Auto Coverage Form states, "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." Doc. No. 28-1 at DEF000011. Carpenter argues that ambiguity is introduced by the fact that the Schedule of Covered Autos You Own lists only two autos, both of which are not actually owned by Frosty's Carpet according to Carpenter's deposition testimony. However, even if Frosty's Carpet does not technically own the autos, it appears the schedule still serves a purpose in that the two autos listed would qualify as "Specifically Described 'Autos'" under Covered Auto Designation Symbol No. 7, which applies to personal injury protection, liability coverage, and a couple other types of coverage. The fact remains that the policy explicitly states that "you" refers to the Named Insured, the Named Insured is clearly listed as Frosty's Carpet, and Carpenter does not otherwise qualify as an "insured" under the "Who Is An Insured" definition in the UM Endorsement. The relevant language in the commercial policy is unambiguous.

### III. CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant case law. No genuine issues of material fact remain, and Grinnell is entitled to judgment as a matter of

15

law.  For the reasons above, Grinnell's motion for summary judgment (Doc. No. 27) is **GRANTED**.  The Court therefore **ORDERS** that the complaint against Grinnell is hereby **DISMISSED WITH PREJUDICE**.

    **IT IS SO ORDERED**.

    Dated this 31st day of December, 2019.

                                      */s/ Peter D. Welte*
                                      Peter D. Welte, Chief Judge
                                      United States District Court